**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DUNCAN GEMMELL,

                      Plaintiff,

v.                                     8:16-CV-1014
                                     (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| SCHNEIDER & PALCSIK<br>57 Court Street<br>Plattsburgh, New York 12901<br>Counsel for Plaintiff | MARK A. SCHNEIDER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>Counsel for Defendant<br>26 Federal Plaza, Room 3904<br>New York, New York 10278<br>Counsel for Defendant | HEETANO SHAMSOONDAR, ESQ. |

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

      Currently before the Court, in this Social Security action filed by Duncan

Gemmell ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 17, 21.)  For the reasons set forth below, Plaintiff's motion for judgment on

the pleadings is granted, and the matter is remanded to the Commissioner for further

proceedings consistent with this Memorandum-Decision and Order.


# I.    RELEVANT BACKGROUND

## A.    Factual Background

Plaintiff was born in 1967, making him 42 years old at the alleged onset date, 48

years old at the date last insured, and 49 years old at the date of the ALJ's decision.  (T.

129, 632).[1]  Plaintiff reported attending high school until the eleventh grade with

involvement in special education and did not obtain a GED.  (*Id.* at 636).  Plaintiff has

past work as a dairy farmer and quarry laborer.  (*Id.* at 364). Generally, Plaintiff alleges

disability due to chronic obstructive pulmonary disease and related breathing difficulties.


## B.    Procedural History

Plaintiff applied for Disability Insurance Benefits on August 30, 2011, alleging

disability beginning August 3, 2009.  (T. 109-112).  Plaintiff's application was initially

denied on January 24, 2012, after which he timely requested a hearing before an

Administrative Law Judge ("ALJ").  (T. at 66, 74).  Plaintiff appeared at a video hearing

before ALJ Dale Black-Pennington on March 4, 2013.  (*Id.* at 625-702).  On March 18,

2013, the ALJ issued a written decision finding Plaintiff was not disabled under the

Social Security Act.  (*Id.* at 18-25.)  On March 5, 2014, the Appeals Council denied

Plaintiff's request for review, making the ALJ's decision the final decision of the

---

[1]  [1]  The Administrative Transcript is found at Dkt. No. 12.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Commissioner. (*Id.* at 625-702). Plaintiff appealed to the United States District Court for the Northern District of New York. On September 23, 2015, the undersigned remanded for further proceedings, including development of the record and reconsideration of the available evidence. (*Id.* at 705-29.)

On January 4, 2016, the Appeals Council remanded consistent with this Court's Order and consolidated Plaintiff's more recent applications for Disability Insurance Benefits and Supplemental Security Income, which had been filed on October 29, 2014. (T. 735.) Plaintiff attended a video hearing with the ALJ on May 3, 2016. (*Id.* at 606.) On August 10, 2016, the ALJ issued a written decision again finding that Plaintiff was not disabled under the Social Security Act. (*Id.* at 606-18.) Plaintiff did not file written exceptions to the Appeals Council, and the Appeals Council did not assume jurisdiction over Plaintiff's claim within 60 days following the date of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(d).

### C.    The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ made the following seven findings of fact and conclusions of law. (T. 608-617.)   Next, the assessed that Plaintiff was insured for disability benefits under Title II until June 30, 2015 and had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 608)  At step two, the ALJ determined that Plaintiff's chronic obstructive pulmonary disease ("COPD"), alcohol abuse, and borderline intellectual functioning were severe impairments. (*Id.* at 609.)  At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R.

§ 404, Subpart P, App. 1 (the "Listings"). (*Id.* at 609-11.) More specifically, the ALJ

considered Listing 3.02 (chronic pulmonary insufficiency), 12.04 (affective disorders),

12.05 (intellectual disability), and 12.09 (substance addiction disorders). (*Id.*)

The ALJ then concluded that, during the relevant period, Plaintiff had the residual

functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except he can lift and carry 10 pounds
> occasionally and less than 10 pounds frequently. He can
> stand and walk for two hours in an eight-hour workday and sit
> for six hours in an eight-hour workday. He can occasionally
> balance, stoop, kneel, and crouch but he should avoid
> concentrated exposure to respiratory irritants such as fumes,
> odors, dust, gases, and poor ventilation. He is able to manage
> all basic mental demands of a workplace environment.

(*Id.* at 611.) At step four, the ALJ found that the above RFC prevented Plaintiff from

performing his past relevant work. (*Id.* at 616.) Considering plaintiff's RFC, age,

education, and work experience, together with the Medical-Vocational Guidelines, the

determined that Plaintiff retained the ability to perform other work in the national

economy such as escort vehicle driver, document preparer, and information clerk. (*Id.*

at 617.) Thus, the ALJ found that Plaintiff was not disabled at Step Five. (*Id.*).

### D. The Parties' Arguments

Plaintiff makes five arguments in support of his motion for judgment on the

pleadings.[2] First, Plaintiff argues that the Step Five finding is not supported by

---

[2] On December 7, 2016, plaintiff's counsel filed a letter request seeking permission to file a 45-page brief, 20 pages beyond the 25 pages allowed by the District under General Order 18. Dkt. No. 13. The Court granted this request in part, permitting plaintiff's counsel to file an extended 35-page brief. Dkt. No. 16. On December 8, 2016, plaintiff's counsel filed a letter request seeking reconsideration of the Court's decision declining plaintiff permission to file a 45-page brief. Dkt. No. 16. The Court denied plaintiff's request for reconsideration, concluding that plaintiff has not made a showing of a need for a brief longer

substantial evidence. (Dkt. No. 17, at 19-23 [Pl. Mem. of Law].) More specifically, Plaintiff argues that the Vocational Expert's testimony that Plaintiff would be able to perform all jobs with a Specific Vocational Preparation ("SVP") of 2 was erroneous because the identified jobs all require greater general educational development skills according to the Dictionary of Occupational Titles ("DOT"). (Dkt. No. 17, at 23 [Pl. Mem. of Law].) Plaintiff also argues that Plaintiff is restricted to performance of only Level One general educational development skills, apparently due to his IQ of 70. (*Id.*)

Second, Plaintiff argues that the ALJ committed legal error in failing to specify the weight given to multiple treating sources, including treating physician Dr. McKeever, who had been the subject of a previous remand order by the Appeals Council. (Dkt. No. 17, at 24-26 [Pl. Mem. of Law].) Third, Plaintiff argues that he is disabled as a result of his combination of lung disease, mental illness, borderline mental retardation, and obesity. (*Id.* at 26-31)

Fourth, Plaintiff argues that the ALJ erred in failing to find his testimony and allegations credible. (Dkt. No. 17, at 31-35 [Pl. Mem. of Law].) More specifically, Plaintiff argues that his good past work history and treatment history support his credibility. (*Id.* at 33-34) Plaintiff also argues that the ALJ erred in failing to consider the consistency of his various statements and in using his continued smoking as a factor in weighing his credibility. (*Id.* at 34-35) Lastly, Plaintiff argues that a September 6, 2016, MRI of Plaintiff's lumbar spine is new and material evidence that the Court should consider. (*Id.* at 35)

---

than 35 pages. Dkt. No. 16. Plaintiff's counsel submitted a brief which, when excluding the pages used for a cover sheet and table of contends, fell within this 35-page extension. Dkt. No. 17.

First, Defendant argues that the Step Five finding is supported by substantial evidence because there was no evidence that Plaintiff was limited to performance of tasks at general educational development Level One. (Dkt. No. 21, at 13-15 [Def. Mem. of Law].) Defendant also contends that the ALJ properly considered the medical opinion evidence, noting that the sources Plaintiff highlighted in his memorandum did not actually submit medical opinions, and therefore there was nothing that the ALJ would have been required to weigh. (*Id.* at 10)

Next, Defendant contends that the ALJ did not err in finding Plaintiff's mental impairments and obesity to be non-severe at Step Two. (Dkt. No. 21, at 5-8) Relatedly, Defendant argues that the ALJ did not err when conducting the assessment of Plaintiff's intellectual impairment at Step Three. (*Id.* at 8-9) Defendant further argues that the ALJ's credibility finding is supported by substantial evidence. (*Id.* at 10-13) Finally, Defendant contends that the September 2016 MRI does not provide a basis for remand because it is not material to the time period at issue in Plaintiff's claim and there is no indication that consideration of this evidence would have influenced a change in the ALJ's findings. (*Id.* at 15-16)

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it

was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably

have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).


## B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord. McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.     ANALYSIS

### A.     Weighing Medical Opinion Evidence

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).[3] "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) *adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). After considering these factors, "the ALJ must

---

[3]  Although the SSA has recently advised that it has eliminated the Treating Physician's Rule, such elimination applies only to matters decided from March 2017 forward.

'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); *see also* SSR 96-8p (SSA), 1996 WL 374184, at *7 (July 2, 1996). This Court has ordered remand in cases where the ALJ failed to appropriately explain the weight afforded to opinion evidence. *See Jordan v. Comm'r of Soc. Sec.*, No. 8:15-CV-0436, 2016 WL 3661429, at *5 (N.D.N.Y. July 5, 2016) (finding remand necessary where the ALJ failed to weigh the opinions from two treating physicians); *Campbell*, 713 F. Supp. 2d at 140 (remanding where the ALJ "did not explain why his findings were contrary, discuss [the State Agency physician's] opinions, or give weight to her opinions"); *Duell v. Astrue*, No. 8:08-CV-0969, 2010 WL 87298, at *5 (N.D.N.Y., Jan. 5, 2010) (remanding in part due to the ALJ's failure to explain the weight he afforded to the opinions of various consultative physicians and psychologists). However, failure to consider or weigh an opinion may be harmless error where consideration of that opinion would not have changed the outcome. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, No. 6:14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying a request for remand because application of the

correct legal standard would not have changed the outcome); *Ryan v. Astrue*, 650 F.

Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly

discounted the treating physician's opinion, but still included the opined limitations from

that opinion in the RFC, so remand would serve no purpose).

Plaintiff argues that the ALJ erred in failing to "mention the weight that she gave

to treating pulmonologist Dr. Sabayev, treating primary care physician Dr. McKeever,

treating psychiatrist Dr. Santoro, or treating licensed clinical social worker Richard

Jack." (Dkt. No. 17, at 26 [Pl. Mem. of Law].) However, as Defendant points out, it

appears that Dr. Sabayev is the only source who provided what could be considered a

medical opinion; the rest merely submitted treatment notes that do not provide a specific

statement of Plaintiff's work-related functioning.[4] Therefore, this Court will focus on the

issue of Dr. Sabayev's opinion.[5]

On November 20, 2015, Dr. Sabayev provided a letter in which he indicated that

Plaintiff has diagnoses of "interstitial lung disease moderate to severe form, NSIP vs

DIP, COPD stage II, dyspnea on mild exertion, [and] status post-surgical lung biopsy

---

[4]  The Court agrees that the ALJ committed no error insofar as he declined to discuss explicitly the other doctors' opinions, as consideration of their medical treatment notes suffices when they reach no conclusions as to Plaintiff's limitations or abilities.

[5]  Plaintiff also notes in a single sentence that the ALJ was ordered by this Court to obtain a medical source statement from Dr. McKeever on remand. (Dkt. No. 17, at 27 [Pl. Mem. of Law].) At the hearing following the remand, the ALJ made a point of emphasizing to Plaintiff's representative (Plaintiff had not been represented at the time of the first hearing and decision) that he should make every effort to obtain a medical source statement from Dr. McKeever, noting its importance based on the remand order. (T. 628.) The ALJ left the record open for Plaintiff's representative to do so and noted that she had also asked her office to attempt to obtain a statement from Dr. McKeever. (*Id.*) At the hearing, the representative indicated that Plaintiff had not seen Dr. McKeever in years and was not sure if he would respond to such a request. (*Id.* at 629.) Two letters from Plaintiff's representative dated after the hearing show that Dr. McKeever only submitted further treatment records in response to his inquiries, but not a medical source statement. (*Id.* at 880, 1260, 1321.) Consequently, there is more than sufficient evidence to conclude that the ALJ made a reasonable attempt to obtain a statement from Dr. McKeever in compliance with the prior remand order, even if those attempts were ultimately unsuccessful in producing a medical source statement.

October 2013." (T. 981.) Dr. Sabayev indicated that "[g]iven the above mentioned problems patient has significant dyspnea on exertion and cannot perform work duties requiring more than mild physical activity." (*Id.*) In discussing the evidence, including the other medical source statements, the ALJ neither mentions Dr. Sabayev's conclusion regarding an inability to perform more than "mild physical activity," nor does the ALJ indicate the weight afforded to this opinion. (*Id.* at 611-16.)

Although Dr. Sabayev's opinion of no more than "mild physical activity" is less than specific, there is evidence in the record to suggest that it could indicate a capacity for work below the sedentary level. Plaintiff testified at the hearing that he worked approximately ten hours per week at a dairy farm, noting he worked for only an hour or hour-and-a-half each day with breaks. (T. 634.) His employer at that farm confirmed his reports, noting that an hour-and-a-half was all Plaintiff could work before becoming tired, and further indicating that he was allowing Plaintiff this part-time work to help him out with his financial troubles, but that Plaintiff would be unlikely to be able to work full-time. (*Id.* at 879.) A walking test conducted in January 2014 showed that Plaintiff became wheezy by the end of a six-minute walk at a brisk and steady pace. (*Id.* at 1026.) In May 2015, he reported to Dr. Sabayev that he had tried to work at a supermarket but was unable due to dyspnea. (*Id.* at 992.) The treatment evidence, particularly from Dr. Sabayev, also shows that Plaintiff continued to experience symptoms at a fairly consistent level of severity even during prolonged periods where he was completely abstinent from cigarette use and smoke exposure. (*See id.* at 518, 524-25, 528, 533-34, 548, 551, 587, 923, 976-78, 984-87, 992-94, 996-98, 1000, 1002-

04, 1001, 1010-12, 1022-24, 1031-33, 1042, 1066, 1074-76, 1342, 1353, 1357-58, 1365.)

Additionally, the ALJ mentions periodic non-compliance with prescribed bronchodilator medications as evidence indicating Plaintiff's lung condition was not as a severe as alleged; yet, this rationale suggests the ALJ did not properly consider all the evidence related to Plaintiff's complex lung impairments. Notably, Plaintiff was prescribed these medications for COPD specifically, but he also had a separate and distinct diagnosis of interstitial lung disease, for which he was provided different treatments.[6] As some of Dr. Sabayev's treatment notes suggest, it was Plaintiff's interstitial lung disease and not his COPD that was the source of much of his breathing difficulties, and the evidence suggests that condition was more difficult to treat and control. The ALJ provides no support for his assumption that the prescribed bronchodilators would actually treat or control the symptoms of interstitial lung disease, and, therefore, whether Plaintiff was always compliant with these medications does not end the analysis regarding the severity or limiting effects of interstitial lung disease as a distinct impairment.

The treatment record is replete with notations that repeated courses of steroids and antibiotics such as Prednisone and Zithromax did not improve Plaintiff's respiratory symptoms. Dr. Sabayev even noted on November 5, 2013, that there was "very little in terms of pharmacological treatment which is available at this point" to treat the

---

[6]    Interstitial lung disease is a general category for a large group of restrictive lung diseases that cause inflammation and scarring of the lungs, including those caused by various autoimmune disorders and exposure to certain chemicals or dusts. *See Interstitial Lung Diseases*, MEDLINE PLUS, NATIONAL INSTITUTE OF HEALTH U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/interstitiallungdiseases.html (last visited July 20, 2017).

symptoms of his interstitial lung disease. (*See e.g.*, T. 525, 534, 537, 1010, 1018, 1031, 1033.)  Dr. Sabayev also indicated in October 2013 that Plaintiff's prognosis for this condition was poor and he referred Plaintiff for consultation for a lung transplant.  (*Id.* at 1039, 1358).  It was later determined by another physician that he was not a candidate for a transplant at that time.  (*Id.*)  The ALJ's failure to distinguish between Plaintiff's COPD and interstitial lung disease, despite the suggestion in the record that they are quite different disease processes, undermines her assessment of Plaintiff's functioning as a result of his respiratory impairments.  Based on the above evidence and the other treatment evidence showing continued respiratory symptoms even when compliant with prescribed treatment and smoking cessation, this Court is not convinced that the ALJ's discussion of the evidence is sufficient to render the ALJ's failure to address Dr. Sabayev's opinion harmless error.

Although it may be possible that an ability to perform "mild physical activity" could correspond with an ability to perform sedentary work,[7] the ALJ's lack of any discussion of Dr. Sabayev's opinion or any suggestion in the decision of how she may have interpreted that opinion prevents this Court from making such a conclusion.  It is the ALJ's responsibility to make factual findings in the first instance, not this Court's.  *See Bartrum v. Astrue*, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012) ("This Court simply cannot, and will not, re-weigh the medical evidence and/or 'create *post-hoc* rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'") (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005); citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Melville v.*

---

[7]   This, of course, would be dependent on whether there was substantial evidence in the record as a whole to support that finding.

*Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)); *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234

(N.D.N.Y. 2012) (same); *Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5

(N.D.N.Y. Aug. 24, 2011) (indicating that "'it is an elementary rule that the propriety of

agency action must be evaluated on the basis of stated reasons,'" and that "a court

'may not properly affirm an administrative action on grounds different than those

considered by the agency.'") (quoting *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d

Cir. 1983); *Burgess v. Astrue*, 53 F.3d 117, 128 (2d Cir. 2008)).  The ALJ's failure to

acknowledge the presence of Dr. Sabayev's opinion combined with the lack of any

indication in the decision of the weight she afforded that opinion, if any, is legal error.

Although there are opinions from non-examining sources that support the ALJ's

findings, Dr. Sabayev was Plaintiff's treating pulmonologist and his opinion is most

significant in addressing whether Plaintiff would be functionally unable to work as a

result of his interstitial lung disease and COPD.  Thus, this Court cannot conclude that

the non-examining physicians' opinions amount to sufficient contrary evidence to

overcome the treating physician's opinion.

Although this Court must uphold an ALJ's interpretation of the evidence where

such interpretation is reasonable and supported by substantial evidence, the problem in

this instance is that the ALJ has not provided any indication as to how interpreted Dr.

Sabayev's opinion -- the decision does not mention it at all.  *See Hart v. Astrue*, 32 F.

Supp. 3d 227, 235 (N.D.N.Y. 2012) ("To the extent Dr. Magsino's opinion is capable of

more than one reasonable interpretation, this Court must defer to the interpretation of

the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue*, 901 F. Supp. 2d

328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one

rational interpretation, then the Commissioner's conclusion must be upheld."). A fact-finder's decision to overlook or disregard a treating physician's opinion cannot automatically lead to an inference that the fact-finder interpreted the opinion as being consistent with her conclusions. Additionally, because the decision does not support a finding that the ALJ properly assessed Plaintiff's interstitial lung disease, it is unclear whether the ALJ's findings are supported by substantial evidence. Given that Dr. Sabayev's opinion could suggest that Plaintiff would be incapable of performing even sedentary work on a full-time sustained basis and there is no explanation to the contrary showing the ALJ interpreted this opinion to indicate an ability to perform sedentary work, the ALJ's failure to discuss the weight afforded to this opinion prevents this Court from determining whether the ALJ's findings are supported by substantial evidence. *See Gallow v. Comm'r of Soc. Sec.*, No. 5:15-CV-1017, 2016 WL 5854281, at *6 (N.D.N.Y. Sept. 13, 2016) (finding remand appropriate where "[t]his Court cannot determine whether substantial evidence supported the ALJ's RFC determination, because there is a 'reasonable basis for doubt' as to whether correct legal principles were applied; therefore, the substantial evidence standard may not be used to uphold the ALJ's decision.") (citing *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 280 (N.D.N.Y. 2009)); *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (quoting *Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail

as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

For all of the above reasons, the ALJ committed reversible error in failing to address and make clear the weight afforded to Dr. Sabayev's opinion. On remand, the Commissioner should ensure that she properly assesses and accounts for the unique attributes of Plaintiff's multiple and distinguishable lung disorders, and should explicitly consider Dr. Sabayev's opinion according to the required factors for assessing opinion evidence from a treating physician.

## B.      Residual Functional Capacity Finding

As concluded in Section III.A of this Memorandum-Decision and Order, the ALJ failed to appropriately indicate the weight afforded to Dr. Sabayev's opinion and failed to properly assess Plaintiff's interstitial lung disease as a distinct impairment from COPD based on the evidence that the symptoms and treatments differed between those two impairments. These errors will require the ALJ to reassess the RFC on remand in light of all the evidence.

Although the Court finds that remand is required for the reasons discussed above, it is worth noting that Plaintiff's related arguments that the ALJ erred in failing to find depression and obesity to be severe impairments are without merit. (Dkt. No. 17, at 29-31 [Pl. Mem. of Law].) The ALJ's findings on these matters are supported by

substantial evidence.  Although the Second Circuit has noted that Step Two is meant to screen out *de minimis* claims, it also recognized that "the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Taylor*, 32 F.Supp.3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, No. 7:05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).  Additionally, this Court has indicated that the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ continues with the sequential evaluation, and provides explanation showing that he adequately considered the evidence related to the impairment that is ultimately found non-severe.  *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find the plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered the plaintiff's anxiety and panic attacks at those subsequent steps).

Here, Plaintiff's argument that the ALJ improperly failed to consider his mental impairments is plainly contradicted by the lengthy discussion of the related mental

treatment evidence in the decision.  (T. 614-15.)  Based on this treatment evidence and the examination and opinion from consultative examiner Carly Mount, Psy.D., which Dr. Mount concluded shows only mild symptoms with intermittent exacerbations that appear to have been partially related to alcohol abuse, the ALJ's conclusion regarding the functional impact of Plaintiff's mental impairments is supported by substantial evidence. (*Id.* at 615).

Additionally, although Plaintiff concedes that he does not meet Listing 12.05 as it relates to his borderline intellectual functioning, he appears to argue that this impairment nonetheless would render him disabled in combination with his other impairments.  (Dkt. No. 17, at 28-29 [Pl. Mem. of Law].)  However, there is little evidence to support greater cognitive limitations than those accounted for in the RFC. Most notably, consultative examiner Dr. Mount opined that Plaintiff had only mild limitations as a result of his intellectual functioning other than mild-to-moderate limitations in the performance of complex tasks.  (T. 1418, 1426-27.)  No other source in the record noted problems with memory, attention, concentration, or other relevant abilities that would contradict this opinion.  Plaintiff reported he could read, write, and perform basic math, noting at the second hearing that these activities were detrimentally impacted by worsening vision or shaking hands rather than his cognitive functioning. (*Id.* at 13, 31, 44, 636-37.)  Thus, substantial evidence supports the ALJ's conclusions related to the effects of Plaintiff's borderline intellectual functioning.

Lastly, although the record contains notations regarding Plaintiff's weight, there is no evidence which specifically suggests that Plaintiff experienced any additional functional limitations related to obesity, either alone or in combination with his other

impairments.  There is therefore nothing in the record contrary to the ALJ's finding that obesity was not a severe impairment.  Accordingly, the ALJ's failure to consider Plaintiff's obesity to be a severe impairment is not a remandable error.

## C.    Credibility Finding

Based on the errors noted above in Section III.A of this Decision and Order, particularly the ALJ's failure to consider the lack of efficacy of the multiple treatments Plaintiff received for interstitial lung disease, the lack of demonstrated improvement in respiratory symptoms during extended periods of smoking cessation, and indications that she appeared to weigh non-compliance with prescribed bronchodilators heavily against Plaintiff's credibility despite the fact that such medications would not be medically expected to treat the symptoms of Plaintiff's interstitial lung disease, the ALJ should also assess Plaintiff's credibility on remand.

## D.    Step Five Finding

In light of the errors noted above in Section III.A of this Decision and Order and the consequent effect that such errors have on the RFC and credibility determinations, the ALJ should also reassess her findings at Step Five on remand to account for any resulting changes in those findings.

## E.    September 6, 2016 MRI

"A remand pursuant to sentence six of [42 U.S.C.] section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the

agency level." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 217 (N.D.N.Y. 2009) (citing *Lisa v. Sec'y of Dep't of Health and Human Servs*., 940 F.2d 40, 43 (2d Cir. 1991)). However, to qualify for a remand on this basis, the evidence must be new, material, and there must have been "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Davidson v. Colvin*, No. 1:12-CV-0316, 2013 WL 5278670, at *5 (N.D.N.Y. Sept. 18, 2013) (quoting 42 U.S.C. § 405(g) (sentence six)). All three prongs of this test must be met to warrant a remand pursuant to sentence six of 20 U.S.C. § 405(g). Evidence is "new" where it is "not merely cumulative of evidence in the administrative record." *Davidson*, 2013 WL 5278670, at *5 (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (citations omitted)). Evidence is considered "material" where it is "relevant to the claimant's condition during the time period for which benefits were denied and probative" and "there is a reasonable possibility that the new evidence would have materially changed the outcome before the Commissioner." *Id.* (citing *Tirado*, 842 F.2d at 597) (citations omitted); *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)). Lastly, Plaintiff must demonstrate that there was good cause for failing to present the evidence at an earlier stage of the adjudication of his claim. *Id.* (citing *Lisa*, 940 F.2d at 43).

Plaintiff argues that a September 6, 2016, MRI study of Plaintiff's lumbar spine should be considered, asserting that it is "retroactive because there is no evidence that this is a new injury." (Dkt. No. 17, at 35 [Pl. Mem. of Law].) However, this report fails to satisfy the requirement of materiality as it is not clearly relevant to Plaintiff's condition during the relevant time period. It should be noted that the MRI was conducted one month after the date of the ALJ's decision and, therefore, provides dates from outside of

the time period under adjudication in the current ALJ decision. Although "medical evidence generated after an ALJ's decision cannot [be] deemed irrelevant solely because of timing," *Pollard v. Halter*, 377 F.3d 183, 192 (2d Cir. 2004), there is not a reasonable possibility that consideration of this MRI would have materially changed the outcome of Plaintiff's claim. Although the record contains scattered references to back pain -- some of which were from prior to the alleged onset date -- as well as an indication of degeneration in the spine on CT imaging of the chest, the record does not show that Plaintiff routinely reported back pain or other related symptoms or sought specific treatment for such symptoms, nor does it contain other evidence of any functional impact of the findings in the MRI. It would not be reasonable to infer that the September 2016 MRI would have been sufficient to change the ALJ's findings despite the absence of evidence indicating that lumbar spine degeneration imposed any symptoms or limitations on Plaintiff's functioning. Consequently, consideration of the evidence as a whole does not show that the September 2016 MRI meets the materiality requirement for a remand pursuant to sentence six of 42 U.S.C. § 405(g).

For all of the above reasons, the September 2016 lumbar spine MRI is not material evidence warranting remand. However, as this Court finds other grounds meriting remand, Plaintiff will have the opportunity to submit this report to Agency during the remand process should he wish it to be considered.

## IV.  CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**, and the matter is **REMANDED** to the Commissioner for further consideration; and it is

**ORDERED**, that Defendant's cross motion for judgment on the pleadings (Dkt. Nos. 20, 21) is **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: August 2, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge